# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JENNIFER GAFFNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:15-cv-01441 |
| ) | Judge Aleta A. Trauger |
| KENTUCKY HIGHER EDUCATION ) | |
| STUDENT LOAN CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Kentucky Higher Education Student Loan Corporation ("KHESLC") has filed a Motion to Dismiss (Docket No. 9), to which the plaintiff, Jennifer Gaffney, has filed a Response in Opposition (Docket No. 14), and KHESLC has filed a Reply (Docket No. 21). For the following reasons, the motion will be denied.

## BACKGROUND

Gaffney is a resident of Davidson County, Tennessee. (Docket No. 1 ¶ 5.) KHESLC is "an independent de jure municipal corporation and political subdivision of the Commonwealth of Kentucky," Ky. Rev. Stat. Ann. § 164A.050(1), that is empowered to make, purchase, sell, and service insured student loans, Ky. Rev. Stat. Ann. § 164A.060(1)–(4), (18). KHESLC is created by Kentucky statute and governed by a fifteen-member board consisting of ten governor-appointed members, the state's treasurer, the president of the state's Council on Postsecondary Education, the secretary of the state's Finance and Administration Cabinet, the state's commissioner of education, and the president of the Association of Independent Kentucky Colleges and Universities. Ky. Rev. Stat. Ann. § 164A.050(1), (3). KHESLC is statutorily directed to enter into contracts to provide loan servicing and collection services to several other

1

Kentucky entities involved in student lending, including the Kentucky Higher Education Assistance Authority. Ky. Rev. Stat. Ann. § 164A.050(13). KHESLC is also authorized, however, to service and collect educational loans for other lenders and holders, including those not based in Kentucky. Ky. Rev. Stat. Ann. § 164A.060(18).

At some point, KHESLC obtained rights to collect on two student loans that had been issued to Gaffney by another lender. (Docket No. 1 ¶ 37–38.) Since November of 2013, KHESLC has allegedly placed hundreds of calls to Gaffney's cellular phone using what Gaffney believes—based on the substantially identical content, cadence, and timbre of KHESLC's voicemail messages—to be an automated dialing system or some other device capable of delivering prerecorded messages. (*Id.* ¶¶ 7–10.) Calls from KHESLC did not meaningfully identify KHESLC as the caller or state that the call was from a debt collector. (*Id.* ¶¶ 42–43.) KHESLC also allegedly made calls to a third party, Robert Reed, in which it discussed details of Gaffney's debt without her consent. (*Id.* ¶¶ 53–56.) Gaffney complains that she never directly gave KHESLC either her telephone number or her consent to receive the calls, and that she has instructed KHESLC, more than once, to stop calling her cell phone with prerecorded messages. (*Id.* ¶¶ 12–13.)

On December 8, 2015, Gaffney filed the present action, pleading claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), as well as a common law claim for invasion of privacy. (Docket No. 1.) On February 5, 2016, KHESLC filed a motion to dismiss for lack of jurisdiction on the ground that KHESLC is an arm of the Commonwealth of Kentucky and entitled to sovereign immunity. (Docket No. 9.) Gaffney responded to KHESLC's motion on March 7, 2016, arguing that KHESLC is not an entity entitled to sovereign immunity, or, in

the alternative, that its sovereign immunity has been waived.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) governs dismissal of lawsuits for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A state's assertion of sovereign immunity constitutes a factual attack. *See Dunn v. Spivey*, No. 2:09–0007, 2009 WL 1322600, at *3 (M.D. Tenn. May 11, 2009). When "considering a factual attack upon the court's jurisdiction, no presumption of truth applies to the plaintiff's factual allegations, and the court is free to weigh the evidence and resolve factual disputes so as to satisfy itself as to the existence of its power to hear the case." *Id.* (citation and quotation marks omitted). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Gentek*, 491 F.3d at 330. "The entity asserting [sovereign] immunity has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

## **ANALYSIS**

Each of the states possesses certain immunities from suit that "flow[] from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (*en banc*). Consequently, a state may not be sued for money damages in federal court by a private individual, subject to a few exceptions. *Id.* at 358–59; *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'" (quoting *Hans v.*

*Louisiana*, 134 U.S. 1, 15 (1890)); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Sovereign immunity extends not only to a state itself but to "arms of the state," such as certain state agencies. *Ernst*, 427 F.3d at 358 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Sovereign immunity does not, however, extend to mere "political subdivisions" of the state such as counties and municipal corporations. *Id.* at 358.

In *Ernst v. Rising*, the Sixth Circuit, sitting *en banc*, held that courts should determine whether an entity is an arm of the state by looking at four factors: "(1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government." *Id.* at 359 (citing *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 44–45 & 51 (1994)). The first of the four factors, the state's potential for liability, "will generally be the most important one." *Id.* at 364. Consideration of all four factors is nevertheless necessary to serve both of the "'twin reasons' for granting states sovereign immunity: the desire not to infringe either a state's purse or its dignity." *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 761 (6th Cir. 2010) (quoting *Hess*, 513 U.S. at 47). Those purposes serve as the "prime guide" in weighing the relevant factors and determining ultimately whether sovereign immunity bars the courts' exercise of jurisdiction in a particular case. *Hess*, 513 U.S. at 47.

## I. Potential for State Liability

KHESLC argues that the potential for state liability weighs in favor of a finding of sovereign immunity, because the Commonwealth of Kentucky is potentially liable for a judgment against KHESLC under the entity's originating and governing statutes. Gaffney

4

disputes KHESLC's reading of the relevant statutes, arguing that they suggest, at most, that the Commonwealth is permitted, but not by law required, to assist in paying KHESLC's liabilities. Gaffney also argues, citing supporting case law from the Fourth Circuit, that the court should consider the fact that KHESLC's own substantial funds from its profitable student loan business render the prospect of its liability ever passing to the Commonwealth functionally very remote— to the point of such an outcome being "virtually impossible." (Doc. No. 14 at 9 (citing *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 804 F.3d 646, 661 (4th Cir. 2015) (holding that state student loan agency was not an arm of the state in part because liability would be covered by its "substantial, commercially generated revenues held both inside and outside the state Treasury"), *petition for cert. filed & views of Solicitor General requested*, Case No. 15-1045 (U.S. Feb. 16, 2016); *see also Pele v. Penn. Higher Educ. Assistance Agency*, 628 F. App'x 870, 872 (2015) (same), *petition for cert. filed & views of Solicitor General requested*, Case No. 15-1044 (U.S. Feb. 16, 2016)).)

Whatever the merits of the Fourth Circuit's approach, the Sixth Circuit has clearly held that "it is the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in *that* case, that controls the inquiry." *Ernst*, 427 F.3d at 359 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)). Accordingly, the court must ask "whether, hypothetically speaking, the state treasury would be subject to 'potential legal liability' *if* the [relevant entity] did not have the money to cover the judgment." *Id.* at 362 (quoting *Doe*, 519 U.S. at 431). In practice, the formal approach embraced by *Ernst* has proven a doubled-edged sword for entities seeking to assert sovereign immunity. On one hand, a plaintiff cannot overcome the State's potential liability merely by showing that the specific claim at issue can be satisfied with the entity's own funds. *Id.* On the other hand, however, an entity

5

cannot rely on a so-called "reimbursement theory" to transform its own liability into a state liability based merely on "the state's willingness . . . to reimburse the entity for damages paid as a result of the judgment." *Lowe v. Hamilton Cty. Dep't of Job & Family Servs.*, 610 F.3d 321, 326 (6th Cir. 2010). Rather, cases involving entities with independent revenue sources have typically looked to whether "a State's constitution and statutory law make the State responsible for funding [the entity's] programs" in the event of a shortfall. *Ernst*, 427 F.3d at 364. *Ernst*, for example, relied on a statutory provision requiring the state legislature to "annually appropriate to the retirement system the amount [of money needed] . . . to reconcile the estimated appropriation made in the previous fiscal year with the actual appropriation needed to adequately fund the retirement system for the previous fiscal year," Mich. Comp. Laws § 38.2302(1), as well as a constitutional provision, Mich. Const. art. 9, § 24, making that duty a "'contractual obligation' owed by the State to each retiree." *Ernst*, 427 F.3d at 360 (citing *Musselman v. Governor*, 533 N.W.2d 237, 246 (1995) ("We hold that the state is obligated to prefund health care benefits under art. 9, § 24.")); *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 776 (6th Cir. 2015) (finding sovereign immunity where constitutional and statutory provisions required state to fund university), *petition for cert. filed*, Case No. 15-1419 (U.S. May 19, 2016).

While *Ernst* focuses on the formal relationship between the state and the entity at issue, the Sixth Circuit's subsequent cases make clear that factual considerations are not irrelevant to the court's inquiry. In some cases, the relevant funding and enabling statutes alone may not "conclusively determine" whether the State potentially will be liable for a judgment against the entity. *See Barachkov v. 41B Dist. Court*, 311 F. App'x 863, 867 (6th Cir. 2009). In such instances, a factual record of the concrete fiscal details of the entity's operations may be relevant. *See, e.g.*, *Lowe*, 610 F.3d at 326–28 (holding that statutes cited by entity, without additional

6

factual support, were insufficient to carry burden of showing potential state liability); *Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 473 (6th Cir. 2005) (holding that the first *Ernst* factor disfavored application of sovereign immunity because "there is no indication that the state contributes to the fund" earmarked for funding entity).

Pursuant to Ky. Rev. Stat. Ann. § 164A.190, KHESLC is "authorized to accept and expend such moneys as may be appropriated from time to time by the General Assembly." That authorization, however, is in the context of a broader authority to expend "such moneys as may be received from any source including income from the corporation's operations." Nothing in § 164A.190 expressly obligates KHESLC to seek, receive, or expend appropriated funds for any purpose. KHESLC nevertheless argues that the Commonwealth is potentially liable for judgments against KHESLC pursuant to Ky. Rev. Stat. Ann. § 164A.070, which draws a distinction between "obligations issued" and "expenses incurred":

> (1) Obligations issued under the provisions of this chapter shall not be deemed to constitute a debt, liability or obligation of the state or a pledge of the faith and credit of the state, but shall be payable solely from the revenues or assets of the corporation. Each obligation issued under this chapter shall contain on the face thereof a statement to the effect that the corporation shall not be obligated to pay the same nor the interest thereon except from the revenues or assets pledged therefor and that neither the faith and credit nor the taxing power of the state is pledged to the payment of the principal of or the interest on such obligation.
>
> (2) Expenses incurred by the corporation in carrying out the provisions of this chapter may be made payable from funds provided pursuant to this chapter and no liability shall be incurred by the corporation hereunder beyond the extent to which moneys shall have been so provided.

KHESLC concedes that Ky. Rev. Stat. Ann. § 164A.070(1) categorically shields the state treasury from obligations related to bonds and notes issued by KHESLC, *see* Ky. Rev. Stat. Ann. § 164A.080, but argues that any judgment against KHESLC would not be an obligation under § 164A.070(1), but instead an expense under § 164A.070(2). KHESLC argues that, because

7

expenses under § 164A.070(2) are not categorically exempt from payment with state funds, they should be ultimately treated as liabilities of the Commonwealth. KHESLC's argument, however, assumes only two possibilities: that a liability is categorically exempt from payment from the state treasury; and that the liability is a direct responsibility of the state. A third possibility, however, is that state funds, if available, may be put toward a particular liability, but the Commonwealth is not required to contribute any such funds. Section 164A.070(2) merely provides that expenses "may be made payable from funds provided pursuant to" chapter 164A. Section 164A.070(2), then, does little more than bring the analysis back around to the funding provisions of § 164A.190, which characterize the availability of state funds as permissive in nature.[1]

KHESLC next relies on Ky. Rev. Stat. Ann. § 164A.160, which authorizes KHESLC to establish a reserve fund "in connection with the issuance of its bonds and notes for student loan purposes." That section further provides:

> In the event any such reserve fund or replacement fund created by the corporation in connection with any such bonds or notes issued . . . should, in violation of any contract made by the corporation with any bondholder or noteholder, be monetarily deficient in any respect . . . , the corporation shall immediately make formal request in writing to the secretary of the Finance and Administration Cabinet, and to the Governor of Kentucky that sums adequate to restore such reserve fund or replacement fund to its contractually required level and to pay any overdue principal and interest on any outstanding bonds and notes of the corporation be included in the next succeeding executive budget, and that such budget request with recommendation for approval by the General Assembly of an appropriated legislative appropriation by the General Assembly to the corporation for the use and benefit of such reserve fund or replacement fund be submitted to such session of the General Assembly.

---

[1] Moreover, the decision to forbid the use of state expenditures for "obligations issued" is not irrelevant to the court's inquiry under this factor. KHESLC has not argued that it is entitled to sovereign immunity only as to the FDCPA and TCPA, or that it is an arm of the state only when making loan collection calls. Rather, the corporation argues that it is an arm of the state categorically entitled to protection from suit for money damages unless sovereign immunity is abrogated. (Docket No. 10 at 14.) It is relevant, then, that the Commonwealth has shielded its coffers from at least some of the corporation's obligations.

8

*Id.* Unlike § 164A.070 and § 164A.190, this section does explicitly direct KHESLC at least to seek state assistance in certain situations. The requests contemplated by § 164A.160, however, are limited both in terms of when they may arise and what relief is contemplated. KHESLC's obligation to request funds only arises when its reserve fund is "monetarily deficient" in violation of a "contract made by the corporation with any bondholder or noteholder." The funds to be requested are only those sufficient "to restore such reserve fund or replacement fund to its contractually required level and to pay any overdue principal and interest on any outstanding bonds and notes." The section does not require KHESLC to seek funds sufficient to cover judgments generally, merely to remedy certain contractual violations. Moreover, while § 164A.160 imposes an obligation on KHESLC to seek funds, it contains no directive for the Commonwealth to comply with that request.

The only provision that KHESLC has identified that expressly contemplates KHESLC's liabilities becoming the State's liabilities[2] is Ky. Rev. Stat. Ann. § 164A.230, which provides that, "[u]pon termination or dissolution, all rights and properties of the corporation shall pass to and be vested in the Commonwealth of Kentucky, subject to the rights of lienholders and other creditors." KHESLC concedes, however, that KHESLC can only be dissolved by its own action. (Docket No. 21 at 5.) KHESLC moreover has not identified any case in which a court has concluded that this factor favors an assertion of sovereign immunity based only on the fact that the state would be left with surviving liabilities in the wake of an entity's ceasing to exist.

---

[2] In its Reply to Gaffney's Response, KHESLC suggests for the first time that "it is not clear that *any* KHESLC funds could lawfully be used to satisfy a judgment against KHESLC," because Ky. Rev. Stat. Ann. § 164A.110 provides that KHESLC may only spend funds "as provided in" chapter 164A, and that chapter contains no provision expressly authorizing KHESLC to satisfy judgments. (Docket No. 21 at 6.) Insofar as the statute is unclear, it is the responsibility of KHESLC, as the party bearing the burden to establish sovereign immunity, to resolve that lack of clarity.

9

At least two courts have looked at this collection of statutes to determine how they bear on the question of sovereign immunity, and they have reached opposite conclusions. In *Skidmore v. Access Group, Inc.*, the Eastern District of Michigan was persuaded by the argument KHESLC has advanced here regarding § 164A.070 and § 164A.190:

> [T]he enabling statute specifically exempts the State's liability for student loan and bond obligations, *only*. The fact that the statute disavows Kentucky's liability for student loan and bond obligations and says nothing about liability for other obligations is significant. Plaintiff fails to identify Kentucky law indicating that a judgment against KHESLC could not be enforced against the State. On the other hand, KHESLC's enabling statute authorizes it to request, accept, and expend funds appropriated by Kentucky's General Assembly.

No. 14-13031, 2015 WL 7889056, at *3 (E.D. Mich. Dec. 4, 2015) (citations omitted). In *Berg v. Access Group, Inc.*, on the other hand, the Eastern District of Pennsylvania rejected the argument under the Third Circuit's similar multi-factor "arm of the state" test. No. CIV.A. 13-5980, 2014 WL 4812331, at *9 (E.D. Pa. Sept. 26, 2014). The first factor of the Third Circuit's test looks to "whether the payment of the judgment would come from the state." *Bowers v. NCAA*, 475 F.3d 524, 546 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007). While this inquiry is not identical to the "potential liability" test in *Ernst*, the district court's analysis is nevertheless instructive:

> KHESLC points to a number of Kentucky statutes that collectively indicate that KHESLC has the ability to request state funds and Kentucky has the ability to appropriate state funds for KHESLC's use. This is not sufficient to tip this factor in favor of KHESLC. Even though Kentucky is able to use state funds to support KHESLC, such support is not mandated, and a state's voluntary contributions to an entity do not create an Eleventh Amendment jurisdictional bar[.] Although the state might well *choose* to appropriate money to an entity to enable it to meet a shortfall caused by an adverse judgment, such voluntary payments by a state simply do not trigger Eleventh Amendment immunity.

*Berg*, 2014 WL 4812331, at *9 (brackets, quotation marks and citations omitted). Though out of circuit, the *Berg* court's reasoning largely echoes the Sixth Circuit's own post-*Ernst* holding,

10

cited above, that sovereign immunity should not be based merely on "the state's willingness . . . to reimburse the entity for damages paid as a result of the judgment." *Lowe*, 610 F.3d at 326. The court is therefore persuaded that the analysis of the Kentucky statutes in *Berg* is the more appropriate way to understand the statutory scheme in keeping with the Sixth Circuit's prior rulings. The permissive state funding language in statutes regarding KHESLC is plainly distinguishable from the compulsory language regarding the state's duty to fund its retirement system in *Ernst*, 427 F.3d at 360, or to fund its universities in *Kreipke*, 807 F.3d at 776.

The court is not convinced that KHESLC has carried its burden of establishing that the potential for state liability favors sovereign immunity. KHESLC has identified no statutes or case law affirmatively providing that a judgment against KHESLC is enforceable against the Commonwealth, or that the Commonwealth is obligated, as opposed to merely permitted, to contribute funds toward any judgment. Nor has KHESLC presented any factual context that might overcome that deficiency. For example, language merely authorizing an entity to receive state funds may be sufficient to tilt this factor in an entity's favor where evidence has shown or the parties concede that the state is, in practice, primarily responsible for funding the entity. *See Harness v. Tenn. Dep't of Children's Servs.*, No. 3:09-CV-15, 2009 WL 2601840, at *2 (E.D. Tenn. Aug. 24, 2009) (finding sovereign immunity where agency was authorized to receive state funds and was "primarily funded by the state treasury"). In order to establish that the potential for state liability favors an extension of sovereign immunity, KHESLC must show—through citation to formal legal obligations, a factual account of fiscal practice, or some combination of the two—that its liabilities are potentially liabilities of the state. It simply has not done so.

## II. Definition Under State Law & Extent of State Control

The second *Ernst* factor encompasses a number of interrelated considerations: "(1) how

state statutes refer to the entity; (2) how state courts refer to the entity; (3) the degree of state control over the entity; and (4) the state's veto power over the entity's actions." *Kreipke*, 807 F.3d at 777 (citing *Ernst*, 427 F.3d at 359). KHESLC argues that, while the language of its governing statutes may superficially suggest that it is not an arm of the state, the substantial control exercised over it by the Commonwealth ultimately tips the balance in favor of sovereign immunity. Gaffney argues, to the contrary, that KHESLC's governing statutes evince a clear intention by the General Assembly that KHESLC be considered a political subdivision, and that, while Kentucky law places some limitations on KHESLC, the corporation remains largely autonomous and independent.

As to KHESLC's definition under statutes, the General Assembly's decision to expressly designate KHESLC "an independent de jure municipal corporation and political subdivision of the Commonwealth of Kentucky," Ky. Rev. Stat. Ann. § 164A.030, weighs heavily against an extension of sovereign immunity. The general rule that municipal entities are not arms of the state is so well-settled that the Sixth Circuit has characterized argument to the contrary as frivolous. *Miles v. Nashville Elec. Serv.*, 525 F. App'x 382, 388 n.2 (6th Cir. 2013). Likewise, a "political subdivision" is, by definition, not an arm of the state for the purposes of sovereign immunity under the Constitution. *Ernst*, 427 F.3d at 358–59. As to the corporation's treatment by Kentucky case law, neither party identifies any Kentucky cases directly commenting on the status of KHESLC. KHESLC argues instead that the corporation would be entitled to sovereign immunity pursuant to the two-pronged test adopted by the Kentucky Supreme Court in *Comair, Inc. v. Lexington-Fayette Urban County Airport Corporation*, which instructs courts to consider (1) "whether the entity in question is an agency (or alter ego) of a clearly immune entity," and, (2) more importantly, "whether the entity exercises a governmental function," meaning a

"function integral to state government." 295 S.W.3d 91, 99 (Ky. 2009) (quoting *Kentucky Center for the Arts v. Berns*, 801 S.W.2d 327 (Ky. 1990)). In *Comair*, the court considered whether an airport board that was charged with "establish[ing], maintain[ing], operat[ing], and expand[ing] necessary, desirable or appropriate airport and air navigation facilities" was entitled to sovereign immunity. *Id.* at 101 (quoting Ky. Rev. Stat. Ann. § 183.133(1)). The court concluded that the airport board's function was governmental, likening it to the provision of roads and highways. *Id.* In so doing, the court expressly contrasted the board's essentially infrastructural duties with "the business of transportation itself," and in particular "commercial transportation." *Id.* at 102. While arguments by analogy can only bring one so far, KHESLC's interstate, commercial, and allegedly highly profitable student loan business seems, to this court, to have a great deal more in common with commercial transportation than with the building of roads. This conclusion is only bolstered by the fact that *Comair* drew its governmental function test from a case that was even more explicit about denying immunity to essentially commercial entities in its conclusion not to extend immunity to a state-created center for the arts:

> We recognize the difficulty of classifying entities for purposes of constitutionally protected sovereign immunity. But certainly not every business can be immunized simply because it is established by act of the General Assembly, and this corporation performs substantially the same functions as any private business engaged in the entertainment business. We cannot perceive how a patron attending the Louisville Orchestra, which formerly performed at the Macauley Theatre and now performs at the Kentucky Center for the Arts, has been deprived by reason of the change in location of his right to maintain a common law action when he is negligently injured. The corporation furnishing the performance hall now is performing the same function that the corporation operating the Macauley Theatre did in the past. If we were to follow such reasoning, there would be no limitation on the scope of sovereign immunity. Every time the state gets involves in an enterprise formerly private the area of sovereign immunity would expand accordingly.

*Berns*, 801 S.W.2d at 330–31. While the details of the test laid out elsewhere in *Berns* were superseded by *Comair*, the *Comair* court made abundantly clear that it drew many of its guiding

13

principles from *Berns*, in particular with regard to the governmental function test. 295 S.W.3d at 99. This court, accordingly, concludes that the Kentucky Supreme Court would more likely hold that KHESLC, despite being created by state statute, is not entitled to sovereign immunity, because its functions are not integral to state government.[3]

The question of control and veto power is a closer one. KHESLC is governed by a board of directors who may be removed by the governor "in case of incompetency, neglect of duties, gross immorality, or malfeasance in office." Ky. Rev. Stat. Ann. § 164A.050(6). While the fact that board members cannot be removed merely at the whim of the governor allows some room for independence, the governor's removal authority is nevertheless a meaningful lever of control. *See Pucci*, 628 F.3d at 763 (weighing state control factor in favor of sovereign immunity despite for-cause termination protections). KHESLC also has some mandatory state reporting duties. As an "agency authorized to issue bonds," KHESLC must submit an annual report to the Commonwealth's comptroller "showing the receipts, expenditures, trustees, depositories, rates of interest paid by depositories, investments, and rates of return on investments" by KHESLC. Ky. Rev. Stat. Ann. § 42.545. KHESLC must also submit an annual report and audit of its expenditures and investments to the governor, the General Assembly, and the secretary of the Finance and Administration Cabinet. Ky. Rev. Stat. Ann. § 164A.170. The reporting duties, along with the governor's removal power, establish at least a general background of supervision and control. The extent to which that control translates to day-to-day operations, however, is murkier. KHESLC argues that it is subject to substantial state control "[b]y statute and in

---

[3] *Skidmore* reached the opposite prediction regarding the application of *Comair* to KHESLC, based on its conclusion that KHESLC's activities were in the furtherance of "making higher education available for Kentucky residents, which the State has declared to be a state concern and function." 2015 WL 7889056, at *6. The question of whether a certain general purpose has been "declared to be a state concern and function," however, is a much less stringent test than looking, as the *Comair* court did, at whether an entity's specific functions are not merely of state concern but integral to state government. 295 S.W.3d at 99.

practice." (Docket No. 10 at 11.)  Because KHESLC has not supplemented the record to better elucidate how its matters are handled in practice, however, the court can only rely on the statutes. Kentucky law identifies some actions that KHESLC cannot take without General Assembly approval, such as engaging in capital projects, Ky. Rev. Stat. Ann. § 45.763, or issuing of bonds or notes that are not secured by the repayment of student loans that meet certain minimum specifications, Ky. Rev. Stat. Ann. § 164A.080(3).  Outside of those areas, however, KHESLC's business appears to be directed by its board without a meaningful risk of the Commonwealth's veto.  KHESLC has the power to independently make, purchase, and service loans; to procure insurance; to modify interest rates or other loan terms; to determine the salaries of its employees; to enter into contracts; and to sue or be sued in its own name.  Ky. Rev. Stat. Ann. § 164A.060(1)–(3), (5)–(7), (9), (11), (15), (18).  KHESLC has provided no examples of any attempt by KHESLC to exercise these powers being vetoed or constrained by the state.

On balance, the second *Ernst* factor weighs slightly against the conclusion that KHESLC is an arm of the state entitled to sovereign immunity.  KHESLC's governing statutes strongly suggest that the corporation is a political subdivision, and relevant Kentucky case law is skeptical of attempts to extend sovereign immunity to effectively commercial enterprises.  The governor is able to exercise some high-level control over the corporation by choosing its decision makers, but that control has not been demonstrated to translate to day-to-day operations, and actual veto points appear to be few.  In light of the unambiguous language that the General Assembly chose to refer to KHESLC, and the fact that KHESLC ultimately bears the burden of establishing its entitlement to sovereign immunity, this factor tilts the court's inquiry further in favor of Gaffney.

**III. Selection of Board Members**

Gaffney does not dispute that ten members of KHESLC's fifteen-member board are appointed by the governor of the Commonwealth, or that four of the remaining five board members are state officials. Ky. Rev. Stat. Ann. § 164A.050(3)(a), (c). While the governor typically must choose a nominee from a list furnished by a nominating committee, the members of that committee are themselves appointed by the governor with the consent of the General Assembly. Ky. Rev. Stat. Ann. § 164.005. Gaffney does urge the court to consider the fact that board members are protected from termination without cause, which the court has done. Even in light of those protections, this factor clearly weighs in favor of KHESLC's position.

## IV. Traditional Purview of the State

KHESLC argues that its activities are in the furtherance of the traditional state function of facilitating the availability of higher education. Gaffney counters that KHESLC is not performing a traditional state function, but, instead, is effectively no different than a for-profit, private debt collection company, and that its services include collection activities for non-Kentucky entities whose student loan portfolios consist mostly or even entirely of loans to non-Kentucky citizens.

The Kentucky General Assembly created KHESLC based on the General Assembly's conclusion that "providing higher education assistance to needy, qualified students is in the best interest of the Commonwealth and constitutes the implementation of a public purpose of statewide import of the Commonwealth." Ky. Rev. Stat. Ann. § 164A.010. The important question under this factor, however, is not whether an entity serves a legitimate, or even laudable, public purpose, but whether the entity's actual functions are those traditionally within the state's purview. KHESLC's position is in many ways analogous to the gas authority that sought to assert sovereign immunity in *Town of Smyrna, Tennessee v. Municipal Gas Authority*

16

*of Georgia,* 723 F.3d 640 (6th Cir. 2013). That gas authority, which acquired, developed, and sold natural gas to municipalities across several states, argued that its activities served the traditional state purpose of "facilitat[ing] statewide and regional distribution of gas to entities that have their own distribution systems." No. 3:11-0642, 2012 WL 1313340, at *8 (M.D. Tenn. Apr. 17, 2012). There can be little doubt that facilitating the distribution of natural gas is a legitimate concern of the state. The Sixth Circuit nevertheless rejected the gas authority's argument, reasoning that its functions were "best described as a commercial activity," unlike "the court system mandated by a state constitution in *Pucci*, 628 F.3d at 764, or a state retirement system funded by the legislature and operating on a state-wide basis like that in *Ernst*, 427 F.3d at 362." 723 F.3d at 651. Like the gas authority, KHESLC facilitates the availability of a good or service that serves a legitimate public purpose, but the interstate and commercial features of its activities undermine its claim to be operating merely within the traditional purview of the state.

In *Skidmore*, the Eastern District of Michigan found that, despite generating substantial profits and focusing in significant part on out-of-state debtors, KHESLC's activities are nevertheless within the traditional purview of the state because they are directed at the "legitimate state concern" of "facilitat[ing] the attainment of education by supplying student financial aid services." 2015 WL 7889056, at *8 (quoting *States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 140 (4th Cir. 2014)). *Skidmore*'s reliance on the legitimacy of the State's interest misinterprets the focus of the final *Ernst* factor. The state may have a legitimate interest in any number of fields, from natural gas, *Smyrna*, 723 F.3d at 651, to funding the eradication of boll weevils, *Perry*, 154 F. App'x at 474. An entity that wishes to enjoy a state's sovereign immunity, however, is asked to meet the more stringent standard of

17

showing not only that the state's interest is legitimate but that the entity's functions are of the sort that have been traditionally exercised by the state itself. If a substantial portion of the entity's activities involve functions that have been left historically to local governments or private industry, the entity will likely fail to meet that standard.

The *Skidmore* court also suggested that the "traditional purview of the state" factor favors KHESLC, because KHESLC's non-Kentucky portfolio generates profits that can then be turned back to assisting Kentucky residents. 2015 WL 7889056, at *8. Taken to its logical end, however, this sort of 'Robin Hood' argument would allow a state-created entity to pursue any nationwide, commercial, for-profit activity—no matter how far outside the conventional functions of the state—and still claim that this factor favors sovereign immunity as long as some portion of the profits were used to finance a more traditional state function. This court sees no support in the case law of this Circuit to support such a bold proposition.

When applying the *Ernst* factors to a novel situation, the court is guided by the ultimate purposes underlying them. The directive to consider whether an entity's activities fall within the traditional purview of the state "stems from the importance of dignity in the origins of our sovereign immunity doctrine," because "if the agency in question carries out a long-recognized state function, it is a particular affront to a state to subject this agency to suit." *Pucci*, 628 F.3d at 764. It is well-settled "that higher education is a function within the traditional purview of state government." *Kreipke* 807 F.3d at 779 (citations omitted), but KHESLC, as even *Skidmore* acknowledges, "is not in the business of education," 2015 WL 7889056, at *6. It is in the business of making, buying, and collecting on student loans, allegedly including many that have no apparent connection to the Commonwealth other than the fact that KHESLC services them. KHESLC has offered no account of why it would be an affront to the dignity of the

Commonwealth for the corporation to answer for actions taken pursuant to its participation in the interstate, commercial market for servicing and collecting student loan debt, just as any private competitors must. This factor accordingly weighs against the extension of sovereign immunity to KHESLC.

**Balancing of Factors**

The *Ernst* factors are not "a checklist that must be satisfied to establish immunity," but rather should be "weighed and balanced against each other based on the unique circumstances of the case." *Kreipke*, 807 F.3d at 777–78. With regard to the foremost factor in the *Ernst* analysis, the potential for state liability, KHESLC has not cleared the bar of actually establishing that the Commonwealth's fiscal relationship to KHESLC rises above a voluntary option to contribute toward KHESLC's expenses. KHESLC's statutory description and, to a lesser degree, its day-to-day autonomy further tilt the analysis against concluding that KHESLC is an arm of the state. KHESLC's strongest argument for applying sovereign immunity is likely the governor's power to appoint and, within limitations, remove members of KHESLC's board. Weighing against that conclusion, though, is that KHESLC is engaged in a commercial, interstate activity that goes far beyond the more traditional purpose of making education available to citizens of the Commonwealth. KHESLC has accordingly failed to carry its burden of showing that this court lacks jurisdiction to hear Gaffney's claims. Because the court concludes that KHESLC is not an arm of the state entitled to sovereign immunity, it need not consider whether KHESLC's sovereign immunity has been waived.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by KHESLC (Docket No. 9) will

be denied and this case will be reset for status conference.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge